**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 20-cv-2108-WJM-KLM

GRILL HOUSE, LLC,

      Plaintiff,

v.

BERKSHIRE HATHAWAY HOMESTATE INSURANCE COMPANY,

      Defendant.

---

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING AS MOOT DEFENDANT'S MOTIONS TO STRIKE**

---

In this insurance action, Plaintiff Grill House, LLC ("Plaintiff") sues Defendant Berkshire Hathaway Homestate Insurance Company ("BHHIC" or "Defendant") for breach of its insurance policy, unreasonable delay and/or denial of insurance benefits, and common law bad faith, resulting from a June 18, 2018 hailstorm.  (ECF 3.)

Before the Court is Defendant's Motion for Summary Judgment ("Motion for Summary Judgment"), filed on January 1, 2022.  (ECF No. 58.)  Plaintiff responded on February 18, 2022 (ECF No. 67), and Defendant replied on March 15, 2022 (ECF No. 78).

Also before the Court are Defendant's Motions to Strike Opinions of Greg Becker, P.E., and David Poynor ("Motions to Strike"), filed on January 6, 2022.  (ECF Nos. 55, 56.)  Plaintiff responded to the Motions to Strike on February 18, 2022 (ECF Nos. 65, 66), and Defendant replied on March 15, 2022 (ECF Nos. 76, 77).

For the reasons stated below, the Motion for Summary Judgment is granted, and the Motions to Strike are denied as moot.

## I. BACKGROUND[1]

### A.    The Policy

Plaintiff owns a historic commercial building (the "Building") in Boulder, Colorado, which is insured under BHHIC Commercial Property Policy No. 02PRM009125-04 (the "Policy").  (ECF No. 58 at 2–3 ¶¶ 1–2.)  This Policy provides coverage for direct physical loss of or damage to Covered Property, subject to all terms, conditions, limitations, and exclusions in the Policy, occurring during the policy period of September 4, 2017 to September 4, 2018.  (*Id.*)

The Policy includes the following terms with respect to an insured's duties:

> **3. Duties in The Event of Loss or Damage**
>
> a. You must see that the following are done in the event of loss or damage to Covered Property:
>
> * * *
>
> (2) Give us prompt notice of the loss or damage.  Include a description of the property involved.

(*Id.* ¶ 3.)

The Policy further provides:

> **7. Valuation**
>
> We will determine the value of Covered Property in the event of loss or damage as follows:

---

[1]  The following factual summary is based on the parties' briefs on Motion for Summary Judgment, and documents submitted in support thereof.  All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

a. At actual cash value as of the time of loss or damage, except as provided in b., c., d., and e. below.

. . .

**3. Replacement Cost**

a. Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Valuation Loss Condition of this Coverage Form.

. . .

d. We will not pay on a replacement cost basis for any loss or damage:

>> (1) Until the lost or damaged property is actually repaired or replaced; and

>> (2) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

. . .

(*Id.* ¶¶ 4–5.)

**B.     The Building**

The Building, which was built in 1902, has a second-floor balcony that has a close view of the roof surface without the necessity of a ladder.  (*Id.* at 4 ¶¶ 7–8.)  The Building's roof consists of glazed tiles, most of which dated back to 1902; however, in 1992, contractors removed the tiles, replaced the roof's underlayment, and replaced any broken tiles with new tiles.  (*Id.* ¶¶ 9–10.)  Following the 1992 tile detach and reset, Plaintiff did not perform regular maintenance on the roof.  (*Id.* at 5 ¶ 15.)

The Building is owned by Grill House, LLC, which in turn is owned by Robert Miller, an attorney who has been a tenant in the Building since 1990.  (*Id.* ¶¶ 11–12.)

**C.**   **The June 18, 2018 Storm**

On June 18, 2018, a hailstorm moved through the Boulder area.  (*Id.* ¶ 18.)

Plaintiff's expert, Greg Becker, P.E., estimates that hail from this storm ranged from

1.25" to 2.25" in diameter.  (ECF No. 67 at 5 ¶ 29.)  Miller was not present in his office in

the Building on June 18, 2018; instead, he was located "probably a half an hour to 45

minutes west of Boulder in the mountains."  (ECF No. 58 ¶¶ 18–19.)  Nonetheless, he

was well aware of the storm as he was driving out of the mountains when his car was

engulfed by hail, forcing him to pull off the road.  (*Id.* at 6 ¶ 20.)

Miller does not recall when he next returned to the Building, but he did not see or

look for any new damage to the Building upon his return.  (*Id.* ¶¶ 22–23.)  He did see

branches on the ground at a neighboring property, but he testified that the branches

"weren't large" and were located at least twenty feet away from the Building.  (*Id.* ¶ 26.)

Plaintiff claims he was unaware of any damage to the Building until a contractor doing

work on a nearby building offered to inspect the Building's roof and reported the

presence of damage.  (*Id.* at 7 ¶ 31.)

**D.**   **Plaintiff's Insurance Claim**

On May 24, 2019, Plaintiff presented an insurance claim to Defendant for

damage purportedly sustained by the June 18, 2018 storm.  (*Id.* ¶ 28.)  When asked

about the reason for the delayed notice under the Policy, Miller testified as follows:

> Q. Can you tell me why Grill House, LLC did not present its
> insurance claim earlier than May 24th of 2019?
>
> A. I don't think—you know, when they looked over, that is,
> when Hunter and his companion looked over the roof, I
> hadn't comprehended the extent of—I believe this is the
> reason.  I've got to think about it because I really haven't
> thought about that specific question.  But I hadn't realized
> the extent that was going on there, and I just have to think

that's probably it.

. . .

Q. Are there any other reasons you can think of that Grill House did not provide notice of its insurance claim until May 24th of 2019?

A. Well, I'm not sure I gave a reason, and you're referring to reasons, and I'm not sure I gave a reason to you, but if I did, let me say I'd have to—I'd have to think about that.  I can't answer that right now.

(*Id.* at 7–8 ¶¶ 32–33.)

Defendant ultimately concluded that the replacement cost for damage to the roof's soft metal valley flashing, as well as the tiles likely to be damaged in the repair process, was $20,935.35, and Defendant issued a payment totaling $12,535.95, reflecting the replacement cost value less Plaintiff's deductible.  (*Id.* at 10 ¶¶ 48–50.) After building consultant Darren Bautista obtained a work bid from Dynamic Roofing Consultants totaling $21,992, Defendant issued a supplemental payment to Plaintiff totaling $1,056.06.  (*Id.* ¶¶ 51–52.)

## III. MOTION FOR SUMMARY JUDGMENT

**A.    Standard of Review**

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986).  A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim.  *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001).  An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the

nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial.  *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

**B.     Analysis**

1.     <u>Breach of Contract Claim</u>

It is well established that "the rights and duties flowing from an accident insurance policy are contractual in nature and are measured by the terms and conditions of the insurance contract to which the parties thereto have agreed."  *Marez v. Dairyland Ins. Co.*, 638 P.2d 286, 288–89 (Colo. 1981) (en banc), *overruled on other grounds by Friedland v. Travelers Indem. Co.*, 105 P.3d 639 (Colo. 2005) (en banc).

A policy's requirement of notice "as soon as practicable" means that notice must be given within a reasonable length of time under the circumstances.  *Clementi v. Nationwide Mut. Fire Ins. Co.*, 16 P.3d 223, 226 (Colo. 2001) (en banc).  "In the property/casualty insurance context, the duty to give notice 'arises when an insured, with reasonable diligence, can ascertain that the [the property has been damaged by a covered event].'"  *656 Logan St. Condo. Ass'n, Inc. v. Owners Ins. Co.*, 389 F. Supp. 3d 946, 950 (D. Colo. 2019) (quoting *Clementi*, 16 P.3d at 226).

The "failure to notify the insurer within a reasonable time constitutes a breach of that contract requiring a justifiable excuse or extenuating circumstances explaining the delay."  *Certified Indem. Co. v. Thun*, 439 P.2d 28, 30 (Colo. 1968) (en banc).  "Unless

6

the delay is so explained, the insurer cannot be held liable under the insurance contract to defend the insured and to pay any judgments recovered against him."  *Id.*; *see also Clementi*, 16 P.3d at 226 (recognizing that "[a]n insured's failure to notify an insurer within a reasonable time constitutes a breach of contract requiring a justifiable excuse or extenuating circumstances explaining the delay").  Although it is ordinarily a question for the factfinder as to what constitutes a reasonable time for the giving of the notice as provided in insurance policies, when facts are undisputed and only one inference can be drawn therefrom, it is a question of law for the court.  *Thun*, 439 P.2d at 30.

Here, Defendant argues that it is entitled to summary judgment on Plaintiff's breach of contract claim because Plaintiff failed to provide prompt notice of its insurance claim as a matter of law.  (ECF No. 58 at 16.)  It argues that Plaintiff waited until May 24, 2019—eleven months and six days after the claimed date of loss—to provide notice of its insurance claim, which was not "prompt notice" under the Policy.  (*Id.* at 19.)  It further contends that although Miller was not present at the Building on June 18, 2018, he drove through the storm and observed branches down on neighboring property.  (*Id.* at 19–20.)  According to Defendant, Miller was unable to offer any justification for Plaintiff's failure to investigate, discover, and report the claimed damage for nearly a year.  (*Id.* at 20.)

In response, Plaintiff argues that Defendant has waived this argument because it failed to plead prompt notice as an affirmative defense in its Answer and has therefore waived the affirmative defense.  (ECF No. 67 at 12 (citing ECF No. 11).)  Plaintiff further argues that it did provide prompt notice to Defendant under the circumstances. Specifically, Plaintiff argues that:

> Given these circumstances[:] (1) the absence of Miller from
> The Grill Mansion at the time of the hail storm, (2) the lack of
> evidence of any visible and/or otherwise verifiable,
> destructive hail damage around or to The Grill Mansion
> building itself, (3) Miller's belief the property was not
> damaged due to its sturdiness, and (4) Miller's non-
> communication with anyone at The Grill Mansion offices
> about the hailstorm, there was nothing to alert Miller or
> cause him to think that he ought to check The Grill
> Mansion's roof for hail damage.  . . . These circumstances
> explain why Miller did not know about or consider that The
> Grill Mansion had been damaged and why Miller did not file
> a Claim immediately after the storm.

(ECF No. 67 at 15.)  Moreover, Plaintiff points out that Miller "immediately" filed a notice

of claim with Defendant after becoming aware of hail damage to the Building's roof.  (*Id.*

at 16.)

As an initial matter, the Court concludes that Defendant has not waived this

argument.  In its Answer, Defendant pled an affirmative defense that "Plaintiff's claims,

in whole or in part, may be barred by breach of policy conditions and/or failure to comply

with conditions precedent, and may be subject to and are barred and/or limited by the

contractual terms, conditions, provisions, exclusions and/or limitations contained within

the Policy."  (ECF No. 11 at 18.)  As Defendant further explained in response to

Plaintiff's interrogatories:

> 8. Do you contend that any act or omission by Plaintiff
> voided, nullified, waived or breached the insurance policy in
> any way?  If so, state the general factual bases for this
> contention.
>
> **ANSWER**: Plaintiff failed to provide prompt notice as
> required by the insurance policy.  Plaintiff claims to have
> sustained damage on June 18, 2018, but did not provide
> notice of its claim until May 24, 2019.  Plaintiff has also failed
> to repair or replace damaged property, a condition precedent
> to obtain replacement cost value benefits under the
> insurance policy.

8

9. Do you contend that Plaintiff failed to satisfy any condition precedent or covenant of the policy in any way?  If so, state the general factual bases for this contention.

**ANSWER**: Plaintiff failed to provide prompt notice as required by the insurance policy.  Plaintiff claims to have sustained damage on June 18, 2018, but did not provide notice of its claim until May 24, 2019.  Plaintiff has also failed to repair or replace damaged property, a condition precedent to obtain replacement cost value benefits under the insurance policy.

(ECF No. 78-1 at 5.)

Moreover, even if these filings were insufficient to give Plaintiff notice of Defendant's anticipated affirmative defense, the Court notes that this defense was explicitly stated in the parties' Final Pretrial Order, which is the controlling document for purposes of trial.  *See Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002) (recognizing that "the inclusion in a claim in the pretrial order is deemed to amend any previous pleadings which did not include that claim").  (*See* ECF No. 71 at 6 (In the Final Pretrial Order, Defendant contends that "Plaintiff's recovery is also barred by its failure to comply with conditions set forth in the insurance policy, including the requirement to give prompt notice of its loss.").)  As such, the Court finds that Defendant has properly preserved this affirmative defense.

Moreover, the Court finds that Plaintiff failed to comply with the "prompt notice" requirement of the Policy as a matter of law.  Although Plaintiff argues that it "immediately" filed a claim with Defendant after Miller subjectively became aware of the Building's damage, the key question is when the "insured, with reasonable diligence, can ascertain that the [the property has been damaged by a covered event].'" *656 Logan St. Condo. Ass'n, Inc.*, 389 F. Supp. 3d at 950 (quoting *Clementi*, 16 P.3d at 226).  The relevant test is one of objective reasonableness, not subjective

reasonableness.  *See Sunflower Condo. Ass'n, Inc. v. Owners Ins. Co.*, 2018 WL

2196089, at *7 (D. Colo. May 14, 2018) (recognizing that courts employ an objective

standard when assessing the reasonableness of a delay).

      Plaintiff's own expert estimates that the June 18, 2018 storm produced hail

ranging in size from between 1.25" and 2.25" in diameter.[2]  (ECF No. 67 at 5 ¶ 29.)

Although Miller was not present at the Building on the date of the storm, it is undisputed

as he was well aware of the storm because he was driving out of the mountains when

his car was "engulfed" by hail, forcing him to pull off the road.  (ECF No. 58 at 5–6 ¶¶

18–20.)  Moreover, Miller saw at least some evidence of a storm around the Building,

including branches on the ground at a neighboring property.  (*Id.* ¶ 26.)  The Court

concludes that these facts should have alerted a reasonable property owner of the need

to ascertain whether the Building was damaged by hail.  The unreasonableness of

Miller's inaction is underscored by the fact that portions of the Building's roof are visible

from a second-floor balcony; as such, it would not have been particularly onerous for

Miller to check the roof for damage.  (*Id.* at 4 ¶¶ 7–8.)  Nonetheless, Miller admits that

he did not even look.  (*See* ECF No. 58 at 6 ¶ 23 (Q. Whenever the next time that you

returned to the [Building], did you see any new damage to the building?  MILLER: No, I

did not.  And I should point out I didn't look. . . .).)

      Because Plaintiff waited over eleven months to discover and report damage after

a hailstorm that brought hail ranging from 1.25" to 2.25" in diameter, the Court

concludes that a reasonable jury could only find that Plaintiff failed in its objective duty

---

[2] For context, a golf ball is 1.68" in diameter.  *See* United States Golf Association, The
Equipment Rules (2020), available at https://www.usga.org/equipment-standards/equipment-
rules-2019/equipment-rules/equipment-rules.html#!ruletype=er&section=introduction (last
accessed May 4, 2022).

of reasonable diligence and failed to comply with the "prompt notice" requirement in the Policy. *See 656 Logan St. Condo. Ass'n, Inc.*, 389 F. Supp. 3d at 952 (concluding Plaintiff failed to provide prompt notice as a matter of law where Plaintiff waited 20 months to arrange for a roof inspection after a hail storm that brought two-and-a-half inch hail); *see also Clementi*, 16 P.3d at 226 (affirming trial court's determination that notice was untimely as a matter of law and that the plaintiffs' delay was unreasonable where plaintiffs failed to provide notice to insurer until five months after they could have reasonably known about their claim); *United Servs. Auto. Ass'n v. Allstate Ins. Co.*, 662 P.2d 1102, 1104 (Colo. App. 1983) (concluding seven-month delay in notice was not prompt as a matter of law).

Coverage is therefore excused in light of Plaintiff's unreasonably late notice[3], and Defendant is entitled to summary judgment on Plaintiff's breach of contract claim.[4]

---

[3] As the undersigned has recognized in prior cases, there is some dispute regarding when an insurer also needs to prove it was prejudiced to be excused from coverage when an insured has failed to provide prompt notice under a policy. *See, e.g., 656 Logan St. Condo. Ass'n*, 389 F. Supp.3d at 952–56. The undersigned has previously held that the notice-prejudice rule does not apply in Colorado to first-party property/casualty claims brought under HOA policies. *Id.* at 956.

Notably, Plaintiff does not argue that Defendant should be required to demonstrate prejudice and appears to concede the argument. (ECF No. 67 at 17 (arguing that "[b]ecause Plaintiff's notice was prompt, prejudice to Defendant is not a factor that needs to be considered—it is irrelevant"). Accordingly, the Court considers the question waived and will not analyze whether Defendant was prejudiced by Plaintiff's unreasonably late notice. *See Phillips v. Calhoun*, 956 F.2d 949, 953-54 (10th Cir.1992) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point.'" (*quoting Pelfresne v. Village of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir.1990))).

[4] Because the Court grants summary judgment in favor of Defendant based on Plaintiff's unreasonably late notice, the Court need not address the other issues raised in the Motion for

2.    <u>Bad Faith Claims</u>

Plaintiff has also alleged claims for common law bad faith breach of insurance contract and unreasonable delay or denial of insurance benefits under Colorado Revised Statutes §§ 10-3-1115 and -1116.  Having concluded that Defendant's denial of coverage was proper as a matter of law, Plaintiff's other claims necessarily fail because Defendant was not obligated to provide coverage under the Policy.  Defendant therefore could not have withheld coverage in bad faith or unreasonably.  *See MarkWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.*, 558 F.3d 1184, 1192–93 (10th Cir. 2009). Thus, Defendant is entitled to summary judgment on these claims as well.

**IV. MOTIONS TO STRIKE**

Because the Court has granted summary judgment in favor of Defendant on all claims, the Court denies as moot Defendant's Motions to Strike.

**V.  CONCLUSION**

For the reasons set forth above, the Court ORDERS as follows:

1.    Defendant's Motion for Summary Judgment (ECF No. 58) is GRANTED;

2.    Defendant's Motion to Strike Opinions of Greg Becker, P.E. (ECF No. 55) is DENIED as MOOT;

3.    Defendant's Motion to Strike Opinions of David Poynor (ECF No. 56) is DENIED as MOOT;

4.    The Clerk shall enter judgment in favor of Defendant Berkshire Hathaway Homestate Insurance Company and against Plaintiff Grill House, LLC and shall terminate this case; and

---

Summary Judgment.  (ECF No. 58 at 22–23.)

12

5.     Defendant shall have its costs, if any, upon compliance with

D.C.COLO.LCivR 54.1.

Dated this 11th day of May, 2022.

BY THE COURT:

William J. Martinez
United States District Judge

13